**Andrew LEAVITT, Plaintiff–Appellant,**

v.

**Daniel B. VASQUEZ, Warden, California State Prison at San Quentin, Tamal, Defendant–Appellee.**

**No. 88–2648.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1989.

Decided May 25, 1989.

As Amended Aug. 9, 1989.

Carlo Andreani, San Francisco, Cal., for plaintiff-appellant.

Gerald A. Engler, Deputy Atty. Gen., San Francisco, Cal., for defendant-appellee.

Before CHAMBERS, SNEED and NOONAN, Circuit Judges.

SNEED, Circuit Judge:

Andrew Leavitt, a state prisoner, appeals from the dismissal of his petition for a writ of habeas corpus. Leavitt claims that an erroneous jury instruction on the requirements of aiding and abetting deprived him of due process of law. We affirm.

I.

FACTS AND PROCEEDINGS BELOW

On December 1, 1980, Andrew Leavitt and his brother, David Leavitt, and two others drove to an apartment occupied by Jean Anderson and her daughter, Patricia Royane. The men allegedly came in search of Royane's son, David Anderson, Sr., and his infant son, David Anderson, Jr. They believed that David Anderson, Sr., had kidnapped the infant from its mother, Sherry Parks, who was at the time David Leavitt's girlfriend.

Andrew Leavitt and David Leavitt left the car and instructed one of the others to keep watch. The Leavitts entered the apartment concealing hatchets behind their backs. Once inside, David Leavitt killed Royane with his hatchet. Andrew Leavitt, meanwhile, overpowered Jean Anderson and struck her in the head with his hatchet. The blow cut off her ear and fractured her skull. Andrew Leavitt said: "That's for good measure and to keep you quiet." The Leavitts then left.

In California state court, Andrew Leavitt relied primarily on a defense of mistaken

identity. The jury, however, convicted him of (1) first degree murder with personal use of a deadly weapon; (2) assault with a deadly weapon with infliction of great bodily injury; (3) burglary with personal use of a deadly weapon with infliction of great bodily injury; and (4) mayhem with infliction of great bodily injury. The California Court of Appeal affirmed and the California Supreme Court denied review.

Andrew Leavitt petitioned the United States district court below for a writ of habeas corpus, claiming that he had received ineffective assistance of counsel and that the trial court erroneously had instructed the jury on the requirements of aiding and abetting in connection with the first degree murder charge. The district court dismissed the petition on both grounds. Leavitt appeals the district court's ruling on the jury instruction to this court.

## II.

### JURISDICTION AND EXHAUSTION

The district court had jurisdiction to consider Leavitt's petition for a writ of habeas corpus under 28 U.S.C. § 2254(a) (1982). Leavitt has exhausted his remedies in state court. We have jurisdiction over Leavitt's appeal under 28 U.S.C. § 2253.

## III.

### STANDARDS OF REVIEW

We review de novo the denial of a writ of habeas corpus. *See Carter v. McCarthy,* 806 F.2d 1373, 1375 (9th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). Leavitt's claim may be reviewed without a showing of cause and prejudice because it was not lost in the state courts because of a procedural default. *See Reed v. Ross,* 468 U.S. 1, 11, 104 S.Ct. 2901, 2907–08, 82 L.Ed.2d 1 (1984). We must grant Leavitt's petition unless we find that any constitutional error resulting from the challenged jury instruction was harmless beyond a reasonable doubt. *See Willard v. California,* 812 F.2d 461, 464 (9th Cir.1987).

## IV.

### ANALYSIS

Leavitt, as noted above, asks for habeas corpus relief on the basis of an erroneous jury instruction regarding his liability for aiding and abetting his brother in the murder of Royane. Leavitt asserts that the instruction incorrectly defined the requisite mens rea for such liability as the mere "knowledge" of the wrongful purpose of the primary criminal actor, rather than an actual "intention" to facilitate his criminal conduct. Leavitt correctly points out the California Supreme Court in *People v. Beeman,* 35 Cal.3d 547, 560, 674 P.2d 1318, 1325, 199 Cal.Rptr. 60, 68 (1984) (in bank), held the then-current-version of CALJIC 3.01, which the trial court used in this case, defective on precisely this ground. *See* CALJIC 3.01 (1979) (current version at CALJIC 3.01 (1984)).

To the extent that *Beeman* rests on state law, we cannot examine its applicability in a habeas corpus case. *See* 28 U.S.C. § 2254(a). We must consider, however, whether the jury instruction violated the due process clause of the Fourteenth Amendment. *See id.* Leavitt argues that such a violation occurred because due process requires a state to prove every element of crime beyond a reasonable doubt, *see In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), and the jury instruction effectively allowed the government to presume intent, *see Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 1970–71, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 523, 99 S.Ct. 2450, 2558–59, 61 L.Ed.2d 39 (1979).

Our decision in *Willard v. California,* 812 F.2d 461 (9th Cir.1987), largely governs our review of Leavitt's claim. In *Willard,* a California prisoner, like Leavitt, challenged his conviction using *Beeman* on grounds that the trial court had instructed the jury on the requirements of aiding and abetting pursuant to the defective CALJIC No. 3.01. This court held, on the basis of several federal precedents, that "due process—independent of state law—does not require that an aiding and abetting charge contain a distinct instruction regarding specific intent." *Id.* at 463. We also held that even if the jury instruction had violated *Winship*'s requirement of proof beyond a reasonable doubt of every element of a crime, the error would not require reversal. We stated: "In our view, the jury could not have found the[ ] elements of the crime without also finding that [the defendant] had the intent of committing, encouraging, or facilitating the crime. Failure to instruct on the need for specific intent was, thus, harmless beyond a reasonable doubt." *Id.* at 464.

Leavitt, however, argues that Justice Scalia's concurring opinion in *Carella v. California,* — U.S. —, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curiam), precludes our use of a harmless error analysis to avoid reaching the *Winship* issue. In *Carella,* the prosecution admittedly erred by using a mandatory presumption to convict the defendant of grand theft for failure to return a rental car. 109 S.Ct. at 2419–20. The majority remanded the case to the state court in order to conduct a harmless error analysis. *Id.* at 2421. Justice Scalia, joined by three other justices, concurred in the judgment but suggested that the Court's prior opinions severely circumscribed the availability of harmless error analysis when the fact finder has never found the required element. *See id.* at 2422. Justice Scalia also stated that this limitation on harmless error analysis also applies to cases in which the courts instruction incorrectly describes an element of the offense. *Id.* at 2423.

Justice Scalia did not, however, suggest that any error of this kind was reversible error. Rather, he articulated the following test:

> When the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings *functionally equivalent* to finding the element required to be presumed.

*Id.* at 2423 (emphasis added). To apply this test we must determine whether the jury by finding that Leavitt knew of his brother's criminal purpose, necessarily found that Leavitt, under the circumstances of this case, had the specific intent to facilitate David's murder of Royane.

In support of his argument that the functional equivalent of the required intent was not found by the jury, Leavitt notes that the record contains evidence showing that: (1) he accompanied his brother to Royane's apartment intending only to retrieve the allegedly abducted infant; (2) his brother never told him that they were going to kill or attack anyone; (3) David Anderson, Sr., had a strong propensity for violence (which, Leavitt argues, shows that he and his brother carried hatchets solely to defend themselves); (4) he scarcely knew Royane; (5) he was intoxicated (and thus could not form any specific intent); and (6) he had good moral character. Leavitt also explains that his statement to Jean Anderson, whom he hit with the hatchet, shows that he intended to injure her but not that he did not intend to kill, or to facilitate the killing of anyone. Leavitt argues, finally, that the prosecutor increased the dimensions of the error by telling the jury emphatically that his intent did not matter.

Having examined the entire record, we conclude that the jury necessarily found the element of intent, as defined in *Beeman,* in any event. The court in *Beeman* stated that an aider and abettor must act with "an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." 35 Cal.3d at 560, 199 Cal.Rptr. at 68, 674 P.2d at 1325 (1984). Leavitt interprets this to mean that the prosecution had to show that an aider and abettor had "the requisite intent of the the underlying substantive offense," which for first degree murder under California law, he contends, consists of (1) the specific intent to kill, plus (2) malice aforethought, plus (3) premeditation and deliberation. Levitt draws support for this reading from *United States v. Gaskins,* 849 F.2d 454, 459–60 (9th Cir.1988), which discussed aiding and abetting under federal law.

The California Supreme Court in *Beeman,* however, specifically rejected Leavitt's position. Distinguishing the intent required of an aider and abettor from the intent required of the actual perpetrator of a crime, the court stated:

> [T]he aider and abettor must share the specific intent of the perpetrator. By "share" we mean neither that the aider and abettor must be prepared to commit the offense by his or her own act should the perpetrator fail to do so, nor that the aider and abettor must seek to share the fruits of the crime.... Rather, an aider and abettor will "share" the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement *with the intent or purpose of facilitating the perpetrator's commission of the crime.*

*Beeman,* 35 Cal.3d at 560, 199 Cal.Rptr. at 68, 674 P.2d at 1326 (citation omitted ) (emphasis added). Obviously an instruction fashioned to conform to *Beeman* would pose no constitutional problem.

We believe that in order for the jury to conclude that Leavitt had knowledge his brother's criminal intent, the jury necessarily found that he gave "aid or encourage-

ment with the intent or purpose of facilitating" Royane's murder. The district court in describing the events stated that "[p]etitioner, accompanied by D. Leavitt, armed himself, left a posted watchman, entered victim's home, inflicted grievous injury with accompanying comment upon J. Anderson while D. Leavitt was simultaneously slaying Royane." Having struck Jean Anderson with a hatchet, Leavitt cannot claim that the evidence shows that he had no intent to do anything beyond retrieving an abducted child, that he intended to use the hatchet for self-defense, or that aiding and abetting his brother in the murder of Royane would conflict with his good moral character. The evidence showing that Leavitt hardly knew Royane makes little difference; he also scarcely knew Jean Anderson but nonetheless brutally fractured her skull. Leavitt's comment to Jean Anderson supports, rather than contradicts, a finding that he had intended to facilitate his brother's criminal conduct. The prosecutor's statements to the jury, while erroneous, do not lead us to conclude that the functional equivalent of the requisite intent was not found.

This leaves only the question of Leavitt's sobriety. Although a witness named Gary Miner stated that Leavitt had been drinking most of the afternoon and was drunk, *see* Reporter's Transcript at 679, his testimony had many weaknesses. Miner did not see Leavitt until 4:00 p.m. and he equivocated when asked whether Leavitt had drunk more than he and whether Leavitt looked more or less normal. *See id.* at 680. Moreover, although Judy Rodriguez also said that Leavitt was drunk, she admitted to testifying at the preliminary hearing that he was not drunk. *See id.* at 805. She stated that she was not "really sure" about his sobriety because she had been drunk at the time and the events had occurred a long time ago. *See id.* at 808. Finally, although Leavitt had a high blood alcohol level when a forensic scientist examined him at 2:00 a.m., the incident occurred sometime after 10:00 p.m. *See id.* at 942. This testimony makes it quite likely that Leavitt had something to drink before the murder, but it does not suggest that Leavitt was too inebriated to form the mental state required by *Beeman*.

AFFIRMED.