**Jesse WILLARD, Petitioner-Appellant,**

v.

**PEOPLE of the STATE OF CALIFORNIA, et al., Respondents-Appellees.**

**No. 85–6549.**

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 30, 1986.*

Decided March 6, 1987.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

Jesse Willard, in pro. per.

John K. Van De Kamp, Atty. Gen. of State of Cal., and Donald F. Roeschke, Deputy Atty. Gen., Los Angeles, Cal., for respondents-appellees.

Before MERRILL, GOODWIN and FLETCHER, Circuit Judges.

MERRILL, Circuit Judge:

Jesse Willard, a state prisoner convicted of robbery, appeals the district court's dismissal of his petition for a writ of habeas corpus. Willard argues that the state trial court's erroneous jury instructions denied him due process of law and that his trial counsel's performance violated his Sixth Amendment right to effective assistance of counsel. We affirm.

## I. FACTS AND PROCEEDINGS BELOW

In August 1982, Jesse Willard was convicted of robbery and sentenced to six years in state prison.[1] At trial, the prosecution's case centered largely on the testimony of the victim, one Vernon Adams. Willard befriended Adams, who wore diamond rings on eight fingers, approximately two weeks before the robbery occurred (Reporter's Transcript (R.T.) at 11). On the day of the robbery, Willard called Adams and asked him to come over and help Willard start his car (R.T. 32). When Adams got out of his car and approached Willard,

an armed man jumped out from behind some shrubbery and said, "Freeze, you've been bought" (R.T. 46). The armed man then looked at Willard and said, "Yeah, you, too" (R.T. 60). The armed man then ordered Willard to remove the rings from Adams' fingers. Willard took five rings, a gold chain, a wallet, and a set of keys (R.T. 46). Willard and the armed man drove off in Willard's car, which started without trouble (R.T. 74).

In a short time, the two men returned to Adams, who was crouching in fear in his own car. The armed man removed three more rings (the most valuable ones, which Adams had removed from his fingers) from Adams' pocket. During this second attack, Willard removed money from Adams' coat pocket (R.T. 79–81). The armed man then hit Adams over the head with the butt of the pistol, and then fled with Willard (R.T. 83–84).

Willard did not take the stand. The defense only called one, relatively unimportant witness. Defense counsel presented no single theory of the case. During cross examination and final argument, he sought mainly to impeach the victim's testimony by showing bias and questioning his sanity (R.T. 335–38). In addition, defense counsel argued, "There's no indication that the defendant was there" (R.T. 340; *see also* R.T. 123). He also sought to prove that Willard acted under duress, merely following the robber's orders at gunpoint (R.T. 60, 113–15, 167–68, 333, 344).

The California Court of Appeal affirmed his conviction, and the California Supreme Court denied several petitions for a writ of habeas corpus. The district court rejected Willard's petition for federal habeas relief.

## II. DISCUSSION

Both issues on appeal are purely legal questions, which this court reviews *de novo*. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

---

1. After a first conviction in March 1982, the state trial judge granted Willard's motion for a new trial. This appeal collaterally attacks his second conviction.

### A. Jury Instructions

The trial court instructed the jury on aiding and abetting pursuant to CALJIC No. 3.00 (1981 rev.) and No. 3.01 (1980 rev.). These instructions defined an aider and abettor as one who, "with knowledge of the unlawful purpose of the perpetrator of the crime, ... aids, promotes, encourages or instigates by act or advice the commission of such crime." CALJIC 3.01 (1980 rev.).[2]

A year and a half after Willard's conviction, the California Supreme Court held that CALJIC No. 3.01 was erroneous under state law because it failed to include California's requirement of specific intent. *See People v. Beeman,* 35 Cal.3d 547, 199 Cal. Rptr. 60, 68, 674 P.2d 1318, 1326 (1984). The court said an appropriate instruction would inform the jury that an aider and abettor must act with "the intent or purpose of committing, encouraging, or facilitating the commission of the offense." *Id.; see also* CALJIC 3.01 (1984 rev.) (revised instructions in light of *Beeman* ).

Insofar as Willard challenges the jury instructions under California law, his claim is not cognizable in federal habeas proceedings. *See* 28 U.S.C. § 2254; *Gutierrez v. Griggs,* 695 F.2d 1195, 1197 (9th Cir.1983). But a federal habeas court can overturn a conviction "where the instruction 'by itself so infected the entire trial that the resulting conviction violates due process.'" *Quigg v. Crist,* 616 F.2d 1107, 1111 (9th Cir.) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)), *cert. denied,* 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980). This court must determine, therefore, whether the aiding and abetting instructions given violated Willard's due process rights.

First of all, due process—independent of state law—does not require that an aiding and abetting charge contain a distinct instruction regarding specific intent. In *Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949), the Supreme Court upheld a conviction under the *federal* aiding and abetting statute. The Court found no error in the trial court's charge that one " 'who aids, abets, counsels, commands, induces, or procures the commission of an act is as responsible for that act as if he committed it directly,' " *id.* at 618, 69 S.Ct. at 769, even though the jurors were given no further explanation of the terms involved, *see id.* at 628, 69 S.Ct. at 774 (Murphy, J., dissenting). *Accord United States v. Rosa,* 705 F.2d 1375, 1380–81 (1st Cir.1983). The *Nye & Nissen* Court was satisfied that the "defendant 'in some sort associate[d] himself with the venture, that he participate[d] in it as in something that he wishe[d] to bring about, that he [sought] by his action to make it succeed.' " 336 U.S. at 619, 69 S.Ct. at 770 (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2nd Cir.1938)); *accord United States v. Mehrmanesh,* 682 F.2d 1303, 1308–09 (9th Cir.1982).

The state aiding and abetting instructions used in Willard's conviction were far narrower than the federal instructions upheld in *Nye & Nissen.* In that case, the federal instructions omitted any reference to the mental state of the aider and abettor, while the charge at issue here required that the aider and abettor have knowledge of the perpetrator's unlawful purpose. Where, as here, there is ample evidence that the defendant associated himself with and participated in the criminal venture, the failure to give a distinct instruction

---

**2.** The pertinent parts of the jury instructions were:

THE PERSONS CONCERNED IN THE COMMISSION OF A CRIME WHO ARE REGARDED BY LAW AS PRINCIPALS IN THE CRIME THUS COMMITTED ... INCLUDE ... THOSE WHO, WITH KNOWLEDGE OF THE UNLAWFUL PURPOSE OF THE PERSON WHO DIRECTLY AND ACTIVELY COMMITS THE CRIME, AID AND ABET IN ITS COMMISSION. . . .

A PERSON AIDS AND ABETS THE COMMISSION OF A CRIME IF, WITH KNOWLEDGE OF THE UNLAWFUL PURPOSE OF THE PERPETRATOR OF THE CRIME, HE AIDS, PROMOTES, ENCOURAGES, OR INSTIGATES BY ACT OR ADVICE THE COMMISSION OF SUCH CRIME.
(R.T. 372–73).

regarding specific intent does not offend federal due process.

■ Willard cites a line of cases that produce a somewhat different argument under the Due Process Clause. In *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Relying on this language from *Winship*, the Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), reversed convictions based upon jury instructions that contained mandatory presumptions.[3] Mandatory presumptions require the factfinder to infer presumed facts if the state proves certain predicate facts, and thus relieve the state of its constitutional burden of proof on an element of the offense. *See Franklin*, 105 S.Ct. at 1971.

■ Although no mandatory presumption infected the jury charge at issue here, Willard argues that the absence of any instruction at all on specific intent similarly relieved the state of its constitutional burden to prove all elements of the offense beyond a reasonable doubt. We need not reach the merits of this argument because the error, if any, was harmless beyond a reasonable doubt.

The element of intent was never a live issue in the case. In this respect, the *Beeman* case is distinguishable. There, intent was a principal issue. The defense in *Bee-*

*man* contended that "although he acted in ways which in fact aided the criminal enterprise, he did not act with the intent of encouraging or facilitating the planning or commission of the offense." 199 Cal.Rptr. at 69, 674 P.2d at 1327. The court concluded that "where the defense centered on the very element as to which the jury was inadequately instructed ..., we cannot find the error harmless." *Id.; see People v. Caldwell*, 36 Cal.3d 210, 224, 203 Cal.Rptr. 433, 441–42, 681 P.2d 274, 282–83 (1984) (holding that a *Beeman* error was harmless because "the challenged instruction could not have affected the jury deliberation and verdict").

In the case before us, appellant's defense was that he never was at the scene of the crime and that Adams' testimony was unreliable. This defense was rejected by the jury and, under the challenged instructions, the verdict represents a finding that Willard had knowledge of the gunman's unlawful purpose and that he was present at the robbery and aided, promoted, encouraged or instigated it.[4] In our view, the jury could not have found these elements of the crime without also finding that Willard had the intent of committing, encouraging, or facilitating the crime. Failure to instruct on the need for specific intent was, thus, harmless beyond a reasonable doubt. *Cf. Rose v. Clark*, — U.S. —, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (holding that harmless error analysis applies to *Sandstrom* mandatory presumption errors).

Although Willard did raise the issue of duress, which does relate to his mental state, the jury was properly instructed on duress[5] and rejected that defense. The

---

**3.** The infirm mandatory presumption in *Sandstrom* was that " 'the law presumes that a person intends the ordinary consequences of his voluntary acts.'" 442 U.S. at 512, 99 S.Ct. at 2453. The illegal charge in *Francis* was similar, although it specified that the presumption was rebuttable. *See* 105 S.Ct. at 1968.

**4.** The jury may well have decided that Willard was a principal in the crime. But because the jury's verdict is general, we must ensure that every possible ground for conviction in the instructions satisfies constitutional standards. *See, e.g., Stromberg v. California*, 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931).

**5.** The duress charge stated:
YOU ARE FURTHER INSTRUCTED THAT A PERSON IS NOT GUILTY OF A CRIME WHEN HE ENGAGES IN CONDUCT OTHERWISE CRIMINAL WHEN ACTING UNDER THREATS AND MENACES UNDER THE FOLLOWING CIRCUMSTANCES: ONE, WHERE THE THREATS AND MENACES ARE SUCH THAT THEY WOULD CAUSE A REASONABLE PERSON TO FEAR THAT HIS LIFE WOULD BE IN IMMEDIATE DANGER IF HE DID NOT ENGAGE IN THE CONDUCT CHARGED; AND TWO, IF SUCH PERSON THEN BELIEVED THAT HIS LIFE WOULD BE SO ENDANGERED. THIS RULE DOES

defense made no argument that Willard's acts were negligent or accidental, *see Beeman,* 199 Cal.Rptr. at 68, 674 P.2d at 1326; nor does such a theory arise naturally from the evidence adduced at trial.

### B. Ineffective Assistance of Counsel

 Willard also claims that his lawyer's failure to present a defense and call certain witnesses over Willard's objection deprived him of his Sixth Amendment right to effective assistance of counsel. We do not entertain this claim because Willard did not include it in his petition to the district court, and the district court did not address it below. *See Ahlswede v. Wolff,* 720 F.2d 1108, 1109 (9th Cir.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 155 (1984). If Willard has exhausted his state court remedies with respect to this argument, he is of course free to file a new petition in the district court raising this ground for relief.

### III. CONCLUSION

The aiding and abetting jury instructions used at Willard's trial were erroneous under California law because they omitted the specific intent element of the crime. We do not decide whether this error violates the principles of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), because, in any event, it was harmless beyond a reasonable doubt. Specific intent was not a live issue at trial: the jury could not have rendered the verdict it did without also finding that Willard had the requisite intent. Willard did not include his Sixth Amendment claim in his petition to the district court, so we do not address it on appeal. Consequently, the district court's denial of the petition for a writ of habeas corpus is AFFIRMED.

NOT APPLY WITH THREATS, MENACES, AND FEAR OF FUTURE DANGER TO HIS LIFE.