**Darryl Bernard WATTS, Petitioner–Appellant,**

v.

**Bill BONNEVILLE, Warden, Respondent–Appellee.**

No. 88–6081.

United States Court of Appeals, Ninth Circuit.

Submitted May 2, 1989 *.

Decided July 14, 1989.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Darryl Bernard Watts, Corcoran, Cal., in pro per.

Donald E. De Nicola, Deputy Atty. Gen. of State of Cal., Los Angeles, Cal., for respondent-appellee.

Before SNEED, REINHARDT and BRUNETTI, Circuit Judges.

SNEED, Circuit Judge:

Darryl Bernard Watts, a state prisoner convicted of one count of rape and two counts of rape in concert, appeals in propria persona from the denial of his petition for a writ of habeas corpus. Watts claims that the state improperly punished him twice for a single criminal act and that the trial court incorrectly instructed the jury. We affirm.

## I.

### FACTS AND PROCEEDINGS BELOW

On March 18, 1980, in El Toro, California, Watts and two others, Simmons and Montgomery, forced Sharon B. at gun point to let them into her home. Once inside, the three men bound and gagged Sharon B. and her husband and began searching through the house. Upstairs they found Kathy B., Sharon B.'s fourteen-year-old daughter, in her bed. The men brought Kathy B. downstairs to her parents. Watts watched over the family for a short time while Simmons and Montgomery continued to search through the rest of the house.

When Simmons and Montgomery returned, they took Kathy B. back upstairs. Each of them then raped her at gun point while Watts remained behind to guard her parents. When they had finished, Watts went upstairs to join them. He stated in crude terms that he also wanted to rape Kathy B. and then proceeded to do so. The three men, afterwards, bound Kathy B., stole the family car, and drove away, thus concluding their cruel and brutal venture.

A jury in a California Superior Court convicted Watts of one count of rape and two counts of rape in concert for aiding and abetting Simmons and Montgomery.

The court sentenced Watts to imprisonment for a term of nine years for the rape and for two consecutive terms of seven years each for the rapes in concert. Various other sentences, for conduct Watts committed elsewhere, are running concurrently with these sentences.

The California Court of Appeal affirmed the judgment and the California Supreme Court denied review. The United States district court below denied Watts' petition for a writ of habeas corpus in May 1988. Watts timely appealed to this court.

## II.

### JURISDICTION AND EXHAUSTION

The district court had jurisdiction to consider Watts' petition for a writ of habeas corpus under 28 U.S.C. § 2254(a) (1982). We have jurisdiction over Watts' appeal under § 2253. Watts has exhausted his remedies in state court.

## III.

### STANDARD OF REVIEW

■ We review de novo the denial of a writ of habeas corpus. *See Carter v. McCarthy*, 806 F.2d 1373, 1375 (9th Cir. 1986), *cert. denied,* — U.S. ——, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). We may review each of Watts' claims without a prior showing of cause and prejudice because he did not lose any of them in the state courts through a procedural default. *See Reed v. Ross*, 468 U.S. 1, 11, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1 (1984). In reviewing the challenged jury instruction, we must grant Watts' petition unless we find that any constitutional error was harmless beyond a reasonable doubt. *See Willard v. California*, 812 F.2d 461, 464 (9th Cir.1987).

## IV.

### MULTIPLE PUNISHMENTS FOR A SINGLE ACT

■ Watts first contends that the California courts should not have imposed two sentences for rape in concert. Although Watts admits that Simmons and Montgom-

ery each raped Kathy B., he adamantly asserts that California can punish him only once for his single act of guarding her parents. To support his position, Watts attempts to rely on both state and federal law. He bases his state law argument on Cal.Penal Code § 654 (West 1982), which provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one...." Although it seems highly unlikely that the California courts violated this provision in sentencing Watts, we cannot review the contention as a matter of state law because 28 U.S.C. § 2254(a) (1982) authorizes the federal courts to grant habeas corpus relief only for violations of federal law.

■ We must consider, however, Watts' alternative argument that imposing the two sentences for a single act violates the Fourteenth Amendment's due process clause. Watts reads the Supreme Court's decision in *Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985), which prohibited sentencing a defendant for both receiving a firearm and possessing a firearm under a federal statute, to mean that the Constitution prohibits punishing a defendant for multiple offenses if the offenses stem essentially from the same act. He cites, as further support, *United States v. Arbelaez*, 812 F.2d 530, 533 (9th Cir.1987) (per curiam), which in a "single act" event prohibited the imposition of separate sentences for (1) aiding and abetting the possession of cocaine and (2) aiding and abetting the distribution of cocaine. The court in *Arbelaez* stated: "'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.'" *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)).

We hold that no violation of due process has occurred in this case. The *Ball* and *Arbelaez* cases do not apply because California punished Watts for two separate criminal acts, not twice for a single act. The ancient and universally accepted principle of accomplice liability holds a defendant legally responsible for the unlawful conduct of others that he aids and abets. *See generally* W. LaFave & A. Scott, *Criminal Law* § 6.6, at 575 (2d ed. 1986). California, applying this principle as embodied in its law, quite properly punished Watts for each of the two acts of rape in concert that he aided and abetted when he guarded the parents. Nothing in the Constitution prohibits this; indeed, in applying federal law, this court routinely has upheld convictions for multiple crimes aided and abetted by a single course of conduct. *See, e.g., United States v. Rubier,* 651 F.2d 628, 629, 631 n. 4 (9th Cir.) (per curiam) (upholding convictions for bank robbery and assault when the defendant aided and abetted the actual perpetrator of the two crimes by driving a getaway car), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981). Although Watts stood guard only once, he enabled his accomplices to commit two rapes in concert. This is more culpable than enabling them to commit only one. Each rape was a separate wrongful act.

## V.

### ERRONEOUS JURY INSTRUCTIONS

Watts also seeks relief on the basis of an erroneous jury instruction regarding the requirements of aiding and abetting under California law. The state trial court based one of the jury instructions on CALJIC No. 3.01 (1979) (current version at CALJIC 3.01 (1984)), which explained that mere knowledge of the perpetrator's unlawful purpose satisfies the *mens rea* requirement for aiding and abetting. In *People v. Beeman,* 35 Cal.3d 547, 560, 674 P.2d 1318, 1325, 199 Cal.Rptr. 60, 68 (1984), however, the California Supreme Court ruled CALJIC 3.01 (1979) defective because aiding and abetting requires the specific "intent or purpose of committing, encouraging or facilitating the commission of the offense."

■ We have confronted *Beeman* errors in several recent habeas corpus cases. *See Leavitt v. Vasquez,* 875 F.2d 260 (9th Cir. 1989); *Vicks v. Bunnell,* 875 F.2d 258 (9th Cir.1989); *Willard v. California,* 812 F.2d 461 (9th Cir.1987). These cases make clear that, under 28 U.S.C. § 2254(a), a *Beeman* error must be measured against the due process clause of the Fourteenth Amendment. We have held, on the basis of several federal precedents, that "due process—independent of state law—does not require that an aiding and abetting charge contain a distinct instruction regarding specific intent." *Willard,* 812 F.2d at 463. We have recognized, however, that due process requires a state to prove every element of crime beyond a reasonable doubt, *see In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), and that a defective jury instruction can violate this requirement by effectively allowing the government to presume the element of intent, *see Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 523, 99 S.Ct. 2450, 2458, 61 L.Ed. 2d 39 (1979). *See Willard,* 812 F.2d at 464.

■ We held in *Leavitt* and *Willard* that, even if use of CALJIC 3.01 had violated *Winship*'s requirements, the error did not require reversal because it was harmless beyond a reasonable doubt. *See Leavitt,* at 262; *Willard,* 812 F.2d at 464. Watts, however, argues that the error in his trial was not harmless for two reasons. First, he notes that he actually requested an instruction directed to the requirement of intent. Second, he contends the prosecution presented no direct evidence that he knew about the rapes until after they had occurred. In reviewing these assertions, we must examine the entire record, including the state court transcripts. *See Vicks,* at 259; *Ruff v. Kincheloe,* 843 F.2d 1240, 1243 (9th Cir.1988). Having performed this review, we disagree with Watts.

The threat to Kathy B. was evident to all. The jury, as instructed pursuant to the defective CALJIC 3.01, found that Watts had acted with knowledge of Simmons and

Montgomery's unlawful purpose. We have no reasonable doubt, from the facts as stated and our review of the record, that the jury also would have found that Watts had acted with "an intent or purpose either of committing, or of encouraging or facilitating commission of, the[ir] offense[s]" as *Beeman* requires. 35 Cal.3d at 560, 674 P.2d at 1325, 199 Cal.Rptr. at 68. Because Watts knew what his cohorts were doing, and immediately indicated that he wanted to join them when they had finished, we are certain that he intended to aid and abet them. Whatever other reasons that Watts had to guard the victim's parents, one was to facilitate the rapes. The error, therefore, was harmless beyond a reasonable doubt.

AFFIRMED.