988 F.2d 119
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Soila GRACIA, Plaintiff-Appellant,
v.
Steve MAGARIAN, Defendant-Appellee.
 No. 92-15158.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 14, 1992.
Decided Feb. 22, 1993.
 
 Appeal from the United States District Court for the Eastern District of California, No. CV-90-00350-OWW; Oliver W. Wanger District Judge, Presiding.
 E.D.Cal.
 AFFIRMED.
 Before WILLIAM A. NORRIS, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Soila Gracia petitions for a writ of habeas corpus, seeking release from confinement in California for the offense of second degree murder. She claims that the jury was improperly instructed on the elements of proximate cause and on foreseeability. We affirm the denial of the petition.
 
 
 3
 The facts of this case are unusual. Gracia went to Albert Sandoval's house with a firearm. Sandoval and Augustine Morales were there. She fired two or three shots at Sandoval, one of which hit him in the lower leg after ricocheting off the floor. She then helped him get to the hospital, where he waited more than a day for surgery. (There was testimony that such a long wait for surgery was negligent and that Sandoval should have been given antibiotics more quickly, although there was also some testimony that the medical care was not negligent.) By the next day, gangrene had set in, and Sandoval's leg was amputated. Four days later, after his condition stabilized, Sandoval went into surgery a third time to close up the skin in the amputated area. During this third, non-emergency operation, he had a heart attack and died.
 
 
 4
 Several medical specialists testified about the cause of death. It was established that Sandoval had a history of heart disease, high blood pressure, and arteriosclerosis. As to the cause of the heart attack, one specialist testified that he "did not think the surgeries or stress played any role in the cause of death." Another said the death was caused by "spontaneous cardiac arrest under anesthesia." A third found the "stress of the surgeries and the experience of being shot" to be the cause of death.
 
 
 5
 The following instructions were given to the jury: CALJIC No. 8.55 (which was modified to incorporate a phrase proposed by the defendant):
 
 
 6
 To constitute murder or manslaughter there must be, in addition to the death of a human being, an unlawful act which was a proximate cause of that death.
 
 
 7
 The proximate cause of a death is a cause which is operative at the moment of death and which in natural and continuous sequence, produces the death, and without which the death would not have occurred.
 
 
 8
 There may be more than one proximate cause of a death. When the conduct of two or more persons contributes concurrently as proximate causes of a death, the conduct of each is a proximate cause of the death regardless of the extent to which each contributes to the death. A cause is concurrent if it was operative at the moment of death and acted with another cause to produce the death.
 
 CALJIC No. 8.57:
 
 9
 Where the original injury is a proximate cause of the death, the fact that the immediate cause of death was the medical or surgical treatment administered or that such treatment was a factor contributing to the cause of death will not relieve the person who inflicted the original injury from responsibility.
 
 
 10
 Where, however, the original injury is not a proximate cause of the death and the death was proximately caused by such medical or surgical treatment or some other cause, then the defendant is not guilty of an unlawful homicide.
 
 CALJIC No. 8.58:
 
 11
 If a person unlawfully inflicts upon another person a physical injury which is a proximate cause of the latter's death, such conduct constitutes an unlawful homicide even though the injury inflicted was not the only cause of the death, and although the person thus injured had been already weakened by disease, injury, physical condition or other cause and although it is probable that a person in sound physical condition thus injured would not have died from the injury.
 
 
 12
 The court rejected other language proposed by the defendant: "it is not sufficient that a cause start or initiate a chain of sequences ending in death, or is part of or a link to that chain;" and, "no contributing factor can be considered a proximate cause of death unless it was a substantial factor contributing to the death."
 
 
 13
 Gracia was convicted by a jury of murder, enhanced for using a firearm. She was also found guilty of assaulting Augustine Morales using a firearm, a conviction which she does not appeal.
 
 
 14
 Denial of a petition for habeas corpus is reviewed de novo. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). A state trial court's failure to properly instruct the jury is not grounds for a writ of habeas corpus unless the defendant was deprived of her constitutional rights to due process. Willard v. California, 812 F.2d 461, 463 (9th Cir.1987); Quigg v. Crist, 616 F.2d 1107, 1111 (9th Cir.), cert. denied, 449 U.S. 922 (1980). "Before a federal court may overturn a conviction resulting from a state trial in which [an erroneous] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Darnell v. Swinney, 823 F.2d 299, 302 (9th Cir.1987) (brackets in original) (citation omitted), cert. denied, 484 U.S. 1059 (1988). The erroneous use of one instruction in place of another is only unconstitutional when "the instruction 'by itself so infect[s] the entire trial that the resulting conviction violates due process.' " Willard, 812 F.2d at 463 (citations omitted); see also Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ("The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."). A defendant's burden on appeal is "especially heavy" when her claim of error is based on the trial court's "failure to give an instruction." Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir.1992) (citing Henderson, 431 U.S. at 155).
 
 
 15
 * Gracia claims that the state trial court erred in refusing to instruct the jury that "no contributing factor can be considered a proximate cause of death unless it was a substantial factor contributing to the death," language adapted from People v. Caldwell, 681 P.2d 274, 280 (Cal.1984). The substantial factor test is used when there are possibly two or more independent causes of a result. See, e.g., People v. Pike, 197 Cal.App.3d 732 (1988); People v. Caldwell, 681 P.2d 274 (Cal.1984).
 
 
 16
 Here, given Sandoval's medical history, it was at least possible that he happened to have a heart attack, completely unrelated to the surgery, anesthesia, or his body's weakness from the gunshot wound and the infection. Assuming, without deciding, that the state court should have given a "substantial factor" instruction, we must determine whether the erroneous "instruction 'by itself so infected the entire trial that the resulting conviction violates due process.' " Willard v. California, 812 F.2d 461, 463 (9th Cir.1987) (citations omitted). Here there is no doubt that the erroneous instruction did not "so infect[ ] the entire trial that the resulting conviction violates due process." Id. As the California court in Pike pointed out, in requesting the substantial factor test rather than the usual proximate cause definition, the defendant was "argu[ing] that less is more" because the substantial factor test "would require a lesser causal showing than the proximate cause definition." Pike, 197 Cal.App.3d at 747. If anything, giving the usual proximate cause instruction instead of the substantial factor one "actually increased the prosecution's quantum of proof." Id.
 
 II
 
 17
 Gracia also objects that the jury was not properly instructed as to foreseeability. Gracia did not specifically request a foreseeability instruction at trial, though she did ask for an instruction that "it is not sufficient that a cause start or initiate a chain of sequences ending in death, or is a part of or a link in that chain." This language, which the state trial court rightly found misleading, was not taken from any case but was the defense counsel's interpretation of CALJIC 8.55.
 
 
 18
 The instructions the state trial court read to the jury, although not explicitly defining "foreseeability," did sufficiently address the element of foreseeability. See People v. Pike, 197 Cal.App.3d 732, 744 (1988) (traditional proximate cause definition "excludes deaths which are only remotely produced"). The instructions given entitled Gracia to acquittal if her gunshot was not "operative" when the victim died. The instruction also entitled her to acquittal, even if the gunshot produced the death, if the "sequence" by which it did so was not "natural and continuous." See Magistrate Judge's Findings and Recommendations, ER at 56 (the phrase "the proximate cause is a cause which in natural and continuous sequence produces death" is "synonymous with 'foreseeability' "). The "natural and continuous" language gives the jury proper notice of their power and duty to acquit the defendant if they find the chain of causation indirect, abnormal or unconnected. Pike, 197 Cal.App.3d at 744.
 
 
 19
 Here the state trial court's "fail[ure] to give a particular buzzword," Magistrate Judge's Findings and Recommendations, ER at 56, did not "so infect[ ] the entire trial that the resulting conviction violates due process." Willard v. California, 812 F.2d 461, 463 (9th Cir.1987) (citation omitted). Although these events unfolded in a highly unusual manner, it was certainly foreseeable that death would result when Gracia fired a firearm in Sandoval's direction.
 
 The judgment of the district court is
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3