89 F.3d 846
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Philip SENEGAL, Petitioner-Appellant,
v.
Theo WHITE, Warden, Respondent-Appellee.
 No. 95-15925.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 17, 1996.
Decided June 25, 1996.
 
 1
 Before: PREGERSON and TROTT, Circuit Judges, and EZRA,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner-Appellant Philip Senegal ("Senegal") appeals the district court's denial of his petition for a writ of habeas corpus arising from his state court conviction for first degree murder and attempted murder. Senegal was sentenced to nine years for attempted murder plus a consecutive indeterminate term of 25 years to life for first degree murder. Senegal claims that his constitutional rights to equal protection, to confront witnesses, and to due process were violated at the state trial stage. We have jurisdiction under 28 U.S.C. §§ 1291, 2253. We affirm.
 
 STANDARD OF REVIEW
 
 4
 The decision whether to grant or deny a petition for a writ of habeas corpus is reviewed de novo. Riley v. Deeds, 56 F.3d 117, 119 (9th Cir.1995). Findings of fact made by the district court relevant to that decision are reviewed for clear error. Id. The standard for determining whether habeas relief should be granted in any given case is whether the alleged trial errors "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619 (1993).
 
 DISCUSSION
 
 5
 Senegal alleges that he was convicted in violation of his federal constitutional rights because (1) the prosecutor improperly exercised peremptory challenges to remove black jurors based on race, in violation of the Equal Protection Clause of the Fourteenth Amendment; and (2) the court improperly admitted hearsay evidence, introduced as a co-conspirator's declaration, in violation of his Fifth, Sixth and Fourteenth Amendment rights to confront witnesses and due process.
 
 I. The Batson Claim
 
 6
 A prosecutor's racially discriminatory use of peremptory challenges constitutes a violation of equal protection. Batson v. Kentucky, 476 U.S. 79, 96 (1986). To establish a prima facie case of a Batson violation, a defendant must show that (1) he is a member of a cognizable racial group; (2) the prosecutor has removed members of such a racial group; and (3) circumstances raise an inference that the prosecutor used the challenges to exclude persons from the jury based on their race. Turner v. Marshall, 63 F.3d 807, 812 (9th Cir.1995) (citing Batson, 473 U.S. at 96). Once the defendant makes a prima facie showing, the burden shifts to the state to come forward with a neutral explanation for the peremptory challenges. Id.
 
 
 7
 Defendant Senegal has satisfied the first two requirements of the prima facie case. We therefore focus our inquiry on whether "the facts and the circumstances 'raise an inference' of exclusion on the basis of race so as to require inquiry into the prosecutor's motives." Id. We conclude that no such inference is raised.
 
 
 8
 Senegal claims that whether a prima facie case has been established is a question of law and thus the district court incorrectly reviewed the state court's determination on this issue for clear error.[1] We have held, however, that "a district court's findings regarding purposeful discrimination in the jury selection process will not be disturbed unless clearly erroneous." United States v. Vasquez-Lopez, 22 F.3d 900, 901 (9th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 225 (1994). The district court thus correctly concluded that the state trial court's determination that Senegal did not establish a prima facie case will only be reversed for clear error.
 
 
 9
 Nevertheless, Senegal claims that it is clear that the trial court erroneously determined that he had failed to make a prima facie case of a Batson violation. Senegal primarily relies on statistical analysis to show that he successfully established a prima facie case. Senegal, a black male, states that the prosecutor had used three of his first six peremptory challenges to remove black jurors and that of 40 possible jurors, only seven were black. Senegal also states that the record of the voir dire contains no race-neutral ground for excluding the black jurors. Senegal concludes that a prima facie case of racial discrimination has been established because the prosecutor used half of his first six peremptory challenges to strike black jurors, even though they only constituted 17% of the venire.
 
 
 10
 Defendant Senegal argues that he established a prima facie case based on our decision in Turner v. Marshall, 63 F.3d 807. In Turner, the government used five out of nine peremptory challenges to exclude black jurors. 63 F.3d at 811. At the time of petitioner Turner's Batson motion, four black women remained on the jury. Id. On these facts, we held that the defendant in Turner established a prima facie case of a Batson violation. But in reaching this conclusion we stated that the state trial judge "may have impermissibly relied on the fact that African-Americans and other minorities remained on the jury, without considering other factors." Id. at 814.
 
 
 11
 We do not find Turner to be dispositive. Unlike Turner, the record before us does not reveal that the state trial court denied defendant Senegal's Batson motion solely on the fact that black individuals remained as potential jurors. In making his ruling on the Batson motion, the judge stated: "There also appear to be four [black] individuals in the panel in the audience who may be called and I have also considered that. I don't think you made out the prima facie case yet. I am sensitive to it though. We'll continue to monitor this." The state trial judge's consideration that there were four remaining black jurors was not improper because other considerations entered into his ruling. See Palmer v. Estelle, 985 F.2d 456, 458 (9th Cir.) (concluding that "[a] trial court may consider, but may not rely solely on, the existence of Blacks on a jury when determining whether a prosecutor has violated Batson "), cert. denied, --- U.S. ----, 113 S.Ct. 3051 (1993).
 
 
 12
 As the district court stated, "[t]he trial court of course heard all of [the] responses to the voir dire questions, and was able to observe the demeanor or other traits of the jurors" in reaching its decision. Here, another factor to consider was the voir dire responses of the perspective jurors. For example, the state challenged a black juror who said she did not like to "sit in judgment on anyone" because of her belief in God. See Vasquez-Lopez, 22 F.3d at 912 (concluding that because a trial court judge observes voir dire first hand, we give "broad deference" to the judge's finding that the defendant did not establish a prima facie case of a Batson violation).
 
 
 13
 Senegal claims that the number of challenged black jurors is sufficient establish a prima facie case and cites Turner in support of this argument. Contrary to Senegal's assertion, Turner did not hold that a prima facie case may be established solely on the number of jurors challenged. 63 F.3d at 812. Turner specifically states that " '[t]here is no magic number of challenged jurors which shifts the burden to the government to provide a neutral explanation for its actions. The combination of circumstances taken as a whole must be considered.' " Id. (quoting United States v. Chinchilla, 874 F.2d 695, 698 (9th Cir.1989)).
 
 
 14
 Senegal further argues that the State has not cited "a single word in the record which would provide a valid, non-racially discriminatory ground for the disqualification of any one of the three subject jurors." (Blue Brief at 10.) But it is only after the defendant has made a prima facie showing that the burden shifts to the State to come forward with a neutral explanation for its exercise of peremptory challenges. Batson, 476 U.S. at 97. Here, a prima facie case of a Batson violation was not established.
 
 
 15
 In short, the district court did not clearly err in ruling that defendant Senegal did not establish a prima facie case of an equal protection violation under Batson.
 
 II. The Hearsay Claims
 A. Co-Conspirator Exception
 
 16
 Senegal claims that his constitutional rights to confront a witness and to due process were violated by the improper admission of hearsay evidence under the co-conspiratory exception.[2]
 
 
 17
 A co-conspirator's statement during the course and in furtherance of the conspiracy is not considered hearsay and is admissible against other members of the conspiracy. Fed.R.Evid. 801(d)(2)(E). For a hearsay statement to be admissible under the co-conspirator exception, the government must establish (1) the existence of a conspiracy, (2) the defendant's connection to the conspiracy, and (3) that the statement was made during and in furtherance of the conspiracy. United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir.1987) (citation omitted).
 
 1. The Existence of a Conspiracy
 
 18
 "We review de novo the legal question of whether the government established a prima facie showing of a conspiracy." United States v. Pena-Espinoza, 47 F.3d 356, 361 (9th Cir.1995) (citation omitted).[3]
 
 
 19
 At trial, the prosecutor provided the following evidence which was sufficient to establish the existence of a conspiracy to murder victim Hockenhull. Chaney regularly sold cocaine on the corner of Harper and Fairview ("the corner"). Senegal was occasionally seen on the same corner selling cocaine. Hockenhull was a friend of Chaney, but Chaney and Hockenhull became involved in a dispute over whether Hockenhull could sell drugs on the same corner as Chaney. On the day of the murder, Senegal, Chaney and others met on the corner. Chaney told Hockenhull's girlfriend, Colleen Van, to go inside the house because he did not want her "caught up in the cross-fire." Hockenhull went to the corner and argued with Chaney. Vann heard Chaney say to Hockenhull, "you can't sell on the corner. If you do, I'm going to kill you." Hockenhull then left the corner and returned with a shotgun and a sock full of ammunition.
 
 
 20
 Another witness, Devie Brooks, a close friend of Hockenhull's girlfriend Vann, corroborated this. Brooks was in Hockenhull's house when she saw Senegal and Chaney talking outside on the night of Hockenhull's murder. At that time, Brooks heard Chaney say "you should have popped him when you had the chance." Brooks then heard someone say "here they come." Brooks observed the group scattering and saw defendant Senegal move to a nearby area behind some parked cars. Just before the shooting, Chaney and two other men approached Hockenhull who also was accompanied by two people. From the house, Brooks heard gun shots and then saw sparks coming from the area where she had previously seen defendant Senegal move to. After the shooting, co-defendant Chaney and the group of men left the area together.
 
 
 21
 This evidence presented at trial, including Brooks's testimony,[4] shows that defendant Senegal and co-defendant Chaney, along with others, arrived at Hockenhull's home with firearms. They spoke with each other and dispersed into different directions. When Hockenhull arrived, they fired their weapons and then left the area in unison. Given the facts and circumstances of this case, the evidence establishes a prima facie showing of the existence of a conspiracy to support the introduction of a co-conspirator's statement.
 
 2. Defendant's Connection to the Conspiracy
 
 22
 "Once a conspiracy is shown, the prosecution need only present slight evidence connecting the defendant to the conspiracy." Crespo de Llano, 838 F.2d at 1017. Senegal had contact with Chaney before Chaney murdered Hockenhull. Moreover, Senegal was present at the murder scene immediately before and after Chaney killed Hockenhull. These facts constitute more than "slight evidence" of Senegal's connection to the conspiracy. Id.
 
 
 23
 3. Statement Made in Furtherance of the Conspiracy
 
 
 24
 The prosecution must have proven that Chaney's statement was made in the course and furtherance of the conspiracy. We review the trial court's finding on this issue for clear error. Pena-Espinoza, 47 F.3d at 361. The district court found that:
 
 
 25
 [T]he evidence of the chain of events (i.e. competition for drug sales in an area where petitioner sold; Chaney's threats in petitioner's presence to kill Hockenhull; someone yelling 'here they come;' petitioner taking a position behind cars; and Hockenhull and Bender are shot) indicates that the statement that you should have popped him before was encouragement to shoot [victim Hockenhull] moments later.
 
 
 26
 (District Court's Order on Petition for Writ of Habeas Corpus at 20.) See Crespo de Llano, 838 F.2d at 1017 (concluding that "statements are in furtherance of the conspiracy if they are made to keep a person abreast of the conspirator's activities, to induce continued participation in the conspiracy, or to allay fears"). We agree with the district court's assessment. Thus, the trial court's conclusion that the challenged statement was made in the course and furtherance of the conspiracy was not clearly erroneous. It follows that the trial court did not err when it admitted Chaney's statement that "you should have popped [murder victim Hockenhull] when you had the chance" as a co-conspirator's statement.
 
 B. Jury Instructions
 
 27
 Senegal asserts that the trial court erred because it gave the jury two conflicting instructions that improperly allowed the jury to consider hearsay evidence against him. Senegal claims that the jury's consideration of hearsay evidence violated his rights to due process and to confront a witness. When addressing a habeas claim regarding an improper state trial jury instruction, we must determine whether the instruction was erroneous and " 'so infected the entire trial that the resulting conviction violates due process.' " Estelle v. McGuire, 502 U.S. 62 (1991) (citation omitted). "It must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some constitutional right." Id. (citation omitted). Furthermore, in reviewing ambiguous instructions, "we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Id. (citation omitted).
 
 
 28
 The trial court instructed the jury, in the language of CALJIC No. 2.07, that
 
 
 29
 Evidence has been admitted against one or more of the Defendants and not against the other. At the time this evidence was admitted, you were admonished that you could not--that it could not be considered by you against the other Defendant. Do not consider such evidence against the other Defendant.
 
 
 30
 Under CALJIC No. 6.24, the trial court also instructed the jury that it could use statements made by Chaney against Senegal, if it found that Chaney had made those statements in furtherance of an existing conspiracy, and if the jury found that Senegal was part of that conspiracy.
 
 1. Due Process
 
 31
 Senegal claims that because the jury instructions were inconsistent, the jury was allowed to ignore evidentiary rulings and convict him without proof beyond a reasonable doubt as to all the elements of the crime. This, he claims, constituted a violation of his Fifth and Fourteenth Amendment due process rights. In particular, Senegal claims that the necessary elements of premeditation, deliberation and intent to kill were not proven. See Watts v. Bonneville, 879 F.2d 685, 688 (1989) (concluding that a defective jury instruction can effectively allow the government to presume the element of intent, thus violating the due process requirement that the state prove every element of a crime beyond a reasonable doubt). Senegal asserts that the two instructions were in conflict because they allowed the jury to consider all the hearsay statements made by Chaney against Senegal, even though these statements were to be considered only against Chaney. Senegal states that CALJIC No. 2.07 instructed the jury that hearsay statements made by Chaney which were admitted against Chaney could not be considered against Senegal. Senegal claims that CALJIC No. 6.24, however, contradicted that instruction by telling the jury that it could use statements by Chaney against Senegal if it found that Chaney made those statements in furtherance of an existing conspiracy and if it found that petitioner was part of that conspiracy.
 
 
 32
 The record does not show that the prosecution made any attempt to use Chaney's death threats against defendant Senegal. Furthermore, the jury was instructed that specific hearsay statements made by Chaney could not be considered against Senegal. Because we must assume that the jury followed the trial court's instructions, United States v. Brady, 579 F.2d 1121, 1127 (9th Cir.1978), cert. denied, 439 U.S. 1074 (1979). We find that the jury did not improperly consider hearsay evidence against Senegal in violation of his due process rights.
 
 2. Right to Confront a Witness
 
 33
 Finally, Senegal claims that his rights to confront a witness under the Sixth and Fourteenth Amendments were violated because the above mentioned jury instructions allowed the jury to consider hearsay, including Chaney's death threats to Hockenhull.
 
 
 34
 Senegal cites Bruton v. United States, 391 U.S. 123 (1968), to support his claim that his right to confront a witness was violated. Bruton held that where a non-testifying co-defendant made an extra-judicial self-incriminating statement that inculpated the other defendant, that statement was generally unreliable and hence inadmissable as violative of the defendant's right of confrontation and cross-examination. Id. at 136-137. Bruton is inapposite. Co-defendant Chaney's statements did not refer to or inculpate Senegal in any way. Furthermore, the trial court instructed the jury to consider the statements only against Chaney.
 
 
 35
 Again, we find no grounds to conclude that the jury ignored the court's limiting instructions regarding Chaney's threats. Brady, 579 F.2d at 1127. Thus, defendant Senegal has not established "a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." Estelle v. McGuire, 502 U.S. 62 (1991) (citation omitted). Therefore, we find that Senegal was not convicted on the basis of hearsay evidence in violation of his Constitutional rights.
 
 
 36
 AFFIRMED.
 
 
 
 *
 The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Turner made a motion in state trial court to vacate the jury panel for racial discrimination in jury selection based on People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978). Wheeler held that discriminatory use of peremptory challenges violates the California Constitution. Because only federal claims are cognizable in federal habeas corpus proceedings, we construe Senegal's claims as alleging violations of federal constitutional rights and will only discuss them in such a light. Turner v. Marshall, 63 F.3d 807, 811 n. 1 (9th Cir.1995)
 
 
 [2]
 We do not review questions of state evidence law, "[o]n federal habeas we may only consider whether the petitioner's conviction violated [federal] constitutional norms." Jamal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir.1991)
 
 
 [3]
 "The standard for reviewing the prima facie showing is actually unsettled in this circuit." See United States v. Castaneda, 16 F.3d 1504, 1507 (9th Cir.1994); compare Arias-Villanueva, 998 F.2d 1491, 1502, cert. denied, --- U.S. ----, 114 S.Ct. 573 (1993). with United States v. Arambula-Ruiz, 987 F.2d 599, 607 (9th Cir.1993). We employ Arias-Villanueva here because we would affirm under either standard
 
 
 [4]
 We note that witness Brooks was an acquaintance of a number of people at the scene of Hockenhull's murder and had personal knowledge of what occurred at the corner that evening