**Michael PECK, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

**No. 1021, Docket 94–2444.**

United States Court of Appeals,
Second Circuit.

Dec. 27, 1996.

Before: NEWMAN, Chief Judge,
KEARSE, WINTER, MINER, WALKER,
McLAUGHLIN, JACOBS, LEVAL,
CALABRESI, CABRANES, and PARKER,
Circuit Judges.

PER CURIAM:

The Court voted to rehear this appeal in banc to consider the harmless error analysis

applicable on review of a collateral attack upon a conviction obtained after a jury charge that, in conformity with then prevailing law, *see United States v. Caming,* 968 F.2d 232, 238–41 (2d Cir.1992), did not include an aspect of the mental state necessary for conviction, an aspect subsequently required, *see Ratzlaf v. United States,* 510 U.S. 135, 148, 114 S.Ct. 655, 663, 126 L.Ed.2d 615 (1994). The Supreme Court having clarified harmless error analysis in *California v. Roy,* —— U.S. ——, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996), the in banc court dissolves itself and leaves the appeal for reconsideration by the original panel in light of *Roy.*

JON O. NEWMAN, Chief Judge, concurring:

I concur in the decision of the in banc Court to dissolve and return this appeal to the panel for further consideration in light of the Supreme Court's recent decision in *California v. Roy,* —— U.S. ——, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996), but add these views in an effort to identify and illuminate uncertainties that have been created by the way the Supreme Court has explicated its recent harmless error jurisprudence in the context of constitutional errors.

## I. Harmless Error Jurisprudence Before *California v. Roy*

Formulating an approach for deciding criminal cases in which a constitutional error is claimed to be harmless requires consideration of two distinct issues: what standard is to be applied in determining whether an error is harmless, and how certain must a court be that an error is harmless, under the applicable standard, before it may leave a conviction undisturbed. Though these issues are logically distinct, courts have not always considered them separately. Prior to *California v. Roy,* three Supreme Court decisions had established the basic framework for considering claims that a constitutional error was harmless.

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court considered both the issues of the standard of harmlessness and the degree of certainty required. As to the standard, the Court said the question is whether the error "contribute[d] to the verdict," *id.* at 24, 87 S.Ct. at 828, adopting the standard it had previously enunciated in *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171 (1963). As to the degree of certainty, *Chapman* ruled that the prosecution bore a burden of proving that the error was harmless "beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828.[1]

In *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Court ruled that for "constitutional error of the trial type," *id.* at 638, 113 S.Ct. at 1722, the *Chapman* test applies only to direct re-

---

1. *Fahy,* where the error concerned admission of illegally seized evidence, had used a formulation that combined the standard and the degree of certainty required: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 375 U.S. at 86–87, 84 S.Ct. at 230. In *Chapman,* the Court stated that its formulation was virtually the same as that used in *Fahy:* "There is little, if any, difference between our statement in *Fahy v. Connecticut* about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24, 87 S.Ct. at 828.

In some subsequent cases, the Court has quoted the degree of certainty language from *Chapman,* "beyond a reasonable doubt," and stated the standard only in the conclusory terms of whether the error was "harmless," without repeating the articulation of the standard in *Chapman*—whether the error "contribute[d] to the verdict." *See, e.g., Rose v. Clark,* 478 U.S. 570, 576, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986); *Harrington v. California,* 395 U.S. 250, 251, 89 S.Ct. 1726, 1727, 23 L.Ed.2d 284 (1969). However, when the Court later revised the harmless error standard for collateral attacks in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), it was careful to note that *Chapman* had articulated both a standard of harmlessness and a degree of certainty. *Id.* at 637, 113 S.Ct. at 1721 (describing *Chapman* issue as whether "there is a '"reasonable possibility"' that trial error contributed to the verdict") (quoting *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828 (quoting *Fahy,* 375 U.S. at 86, 84 S.Ct. at 230)).

view and that on collateral attack the standard for harmless error, drawn from *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'"[2] *Brecht*, 507 U.S. at 637, 113 S.Ct. at 1721 (quoting *Kotteakos*, 328 U.S. at 776, 66 S.Ct. at 1253). *Brecht* did not precisely articulate the degree of certainty a reviewing court must have in determining whether the standard of "substantial and injurious effect or influence" had been met, but the opinion makes clear that the "beyond a reasonable doubt" formulation of *Chapman* is being rejected. *Id.* at 636–37, 113 S.Ct. at 1721–22.

In *O'Neal v. McAninch*, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), the Court determined the degree of certainty a reviewing court must have in order to conclude that a constitutional error, raised in a habeas corpus petition, was harmless under the *Brecht* standard. A six-member majority ruled that if the reviewing court is in "grave doubt" as to whether the error is harmless, the habeas petitioner wins. *Id.* at ——, 115 S.Ct. at 994. The Court explained that by "grave doubt" it meant that the issue of harmlessness is "so evenly balanced" that the

judge feels "in virtual equipoise" on the issue.[3] *Id.*

In addition to the *Chapman* and *Brecht/O'Neal* approaches to harmless error, the Court introduced a third approach in *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989). *Carella*, which also involved collateral review, concerned a jury charge that informed the jurors of two mandatory presumptions applicable in a criminal case.[4] There was no objection to the charge. The Supreme Court ruled that the charge was constitutionally erroneous, and reversed and remanded for consideration of whether the error was harmless. The error would be harmless, the majority opinion ruled, if "no rational jury could find the predicate acts [underlying the presumption] but fail to find the fact presumed." *Id.* at 267, 109 S.Ct. at 2421. Justice Scalia wrote separately, for himself and three other Justices, to make clear "that the harmless-error analysis applicable in assessing a mandatory conclusive presumption is wholly unlike the typical form of such analysis." *Id.* (Scalia, J., with whom Brennan, Marshall, and Blackmun, JJ., join, concurring in the judgment). In the "usual case," he wrote, where the inquiry is whether erroneous admission of evidence requires a

---

**2.** It is arguable that the standards as formulated in *Chapman* (did the error "contribute" to the verdict?) and as formulated in *Brecht* (did the error "ha[ve] a substantial and injurious effect or influence" on the verdict?) have more semantic than substantive difference. Nevertheless, the *Brecht* opinion evidences a clear intent to enunciate a standard that is easier for the prosecution to meet than the standard set forth in *Chapman*. What makes the prosecution's task easier, however, may have more to do with lowering the prosecution's burden of persuasion than lessening the standard as to harmlessness. As Justice Stevens has noted, "In the end, the way we phrase the governing standard is far less important than the quality of the judgment with which it is applied." *Brecht*, 507 U.S. at 643, 113 S.Ct. at 1724 (Stevens, J., concurring).

**3.** Though the invocation of an issue being in "equipoise" might suggest that the Court was determining which side bears the burden of proof, *i.e.*, bears the risk of non-persuasion, Justice Breyer explained that it was "conceptually clearer for the judge to ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?' than for the judge to try to put the same question in terms of proof burdens (*e.g.*, 'Do I believe the party has borne its burden of showing ... ?')." *Id.* at ——, 115

S.Ct. at 995 (ellipsis in original). Though the state was not formally assigned a burden of proof on the issue of harmlessness, the state nonetheless loses in a case where the issue is in equipoise in the mind of the reviewing judge.

**4.** The trial court charged the jury as follows:

"Presumption Respecting Theft by Fraud:
"Intent to commit theft by fraud is presumed if one who has leased or rented the personal property of another pursuant to a written contract fails to return the personal property to its owner within 20 days after the owner has made written demand by certified or registered mail following the expiration of the lease or rental agreement for return of the property so leased or rented."
"Presumption Respecting Embezzlement of a Leased or Rented Vehicle:
"Whenever any person who has leased or rented a vehicle wilfully and intentionally fails to return the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle."

*Carella*, 491 U.S. at 264, 109 S.Ct. at 2420. *See* Cal.Penal Code Ann. § 484(b) (West 1988); Cal. Veh.Code Ann. § 10855 (West 1987).

reviewing court to reverse a conviction, the court considers the trial record as a whole to decide "whether the fact supported by the improperly admitted evidence was in any event overwhelmingly established by other evidence." *Id.* But with a conclusive presumption, he continued, a reviewing court may not make its own guess from the record as a whole as to whether a properly instructed jury would have found the presumed fact. Instead, the task for the reviewing court is to determine whether "the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact." *Id.* at 271, 109 S.Ct. at 2423–24. In other words, the analysis concerns not what a properly instructed jury *would have* found, but what the jury *actually* found. In Justice Scalia's terms, whenever the test he enunciated is met, the findings the jurors did make "is functionally equivalent to finding the element required to be presumed." *Id.*[5]

The Court's approach in *Carella*, especially as explicated in Justice Scalia's concurrence, can be viewed as either a third standard for determining harmless error or a different way of determining whether the *Brecht* standard of harmlessness has been met. If a court considers *Carella* to set forth a standard, it would ask whether it concludes, upon examination of the facts the jury did find, that no reasonable jury could fail to find the presumed fact. If a court considers *Carella* to set forth a different way of meeting the *Brecht* standard, it would ask whether the erroneous charge had a substantial and injurious effect or influence on the verdict, and it would answer that question by inquiring whether it concludes, upon examination of the facts the jury did find, that no reasonable

jury could fail to find the presumed fact; if so, there was no injurious effect upon the verdict.

The initial uncertainty arising from the articulation of these differing standards, especially the two approaches applicable to collateral review (*Brecht/O'Neal* and *Carella/O'Neal*),[6] concerned the types of errors to which these approaches applied. Some clarification as to the scope of the *Brecht/O'Neal* approach had begun to emerge when the Supreme Court decided *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The issue was whether harmless error analysis of any sort applied to the erroneous admission of a coerced confession. A five-member majority held that it did. *Id.* at 302, 111 S.Ct. at 1260 (part II of opinion of Rehnquist, C.J., with whom O'Connor, Scalia, Kennedy, and Souter, JJ., join). The Chief Justice drew a distinction between "trial error," which he described as "error which occurred during the presentation of the case to the jury," *id.* at 307, 111 S.Ct. at 1263, and "structural defects," which he described as a defect "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. at 1265. "Trial errors," the majority ruled, were subject to harmless error analysis; "structural defects" were not, since they "defy analysis by 'harmless-error' standards." *Id.* at 309, 111 S.Ct. at 1265. As illustrations of "structural defects," the Chief Justice cited cases involving "total deprivation of the right to counsel," *id.* (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), "a judge who was not impartial," *id.* (citing *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)), "unlawful exclusion of members of the defendant's race from a grand jury," *id.* at 310,

---

5. The standards articulated by the majority and concurring opinions in *Carella* appear to be substantially similar. Both focus on what the jury actually found, not on a prediction of what a properly instructed jury would have found. The majority scrutinizes the predicate facts relied on in the jury instruction. The concurrence broadens the inquiry to include not only those facts but also other facts necessarily found by the jury.

6. Neither the majority nor the concurrence in *Carella* explicitly considered the degree of cer-

tainty a reviewing court must have to conclude that an error is harmless under the *Carella* standard. However, since the *Carella* standard was formulated in the context of a collateral attack, it seems likely that the Court would want the degree of certainty as formulated in *O'Neal* to apply to any case to which the *Carella* standard applied. Justice Scalia made this point explicit in his concurring opinion in *California v. Roy*, —— U.S. ——, ——, 117 S.Ct. 337, 339, 136 L.Ed.2d 266, 271 (1996).

111 S.Ct. at 1265 (citing *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)), "the right to self-representation," *id.* (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177–78, n. 8, 104 S.Ct. 944, 950–51 n. 8, 79 L.Ed.2d 122 (1984)), and "the right to public trial," *id.* (citing *Waller v. Georgia*, 467 U.S. 39, 49 n. 8, 104 S.Ct. 2210, 2217 n. 8, 81 L.Ed.2d 31 (1984)).

The taxonomy of constitutional errors outlined in *Fulminante* appeared likely to place most, and perhaps all, errors in jury instructions into the category of "trial type" errors, to which some form of harmless error analysis would apply, but left it uncertain whether the same harmless error approach applicable to erroneous evidentiary rulings would apply to constitutional errors in jury charges.

*Brecht* itself did not resolve this uncertainty, since the error there concerned the prosecutor's improper use of the defendant's post-*Miranda* silence for impeachment purposes, an error, like the error in *Fulminante*, relating to evidence.

Six weeks after *Brecht*, the Court ruled in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), that at least one type of error in a jury instruction is a "structural" error, not subject to any form of harmless error analysis. The issue was whether a constitutionally deficient instruction on reasonable doubt could be harmless error. A unanimous Court ruled that it could not. Justice Scalia, the author of the *Carella* concurrence, wrote the Court's opinion, in which all the Justices joined. The Chief Justice, the author of *Brecht*, wrote a separate concurring opinion.

Justice Scalia supported his ruling with two modes of analysis. The first built upon his concurring opinion in *Carella*. As he had said of the jury charge error concerning presumptions in *Carella*, Justice Scalia ruled that the jury charge error concerning reasonable doubt in *Sullivan* could not be assessed under traditional harmless error analysis, *i.e.*, inquiring on the basis of the entire record what the jury *would have* found in the absence of the error. *Sullivan*, he noted, was a weaker case for harmless error analysis than *Carella*. At least in *Carella*, he said in *Sullivan*, the reviewing court could exam-

ine the predicate facts that the jury did find in order to apply the conclusive presumption and uphold the conviction if those facts are so closely related to the presumed fact that no rational jury could find the former without finding the latter. 508 U.S. at 280–81, 113 S.Ct. at 2082–83. In *Sullivan*, however, where the jury was improperly charged as to reasonable doubt, no facts have been constitutionally found, and there "is no *object*, so to speak, upon which harmless error scrutiny can operate." *Id.* at 280, 113 S.Ct. at 2082 (emphasis in original). It was therefore improper to speculate upon what verdict a properly instructed jury would have returned.

After concluding his discussion about the absence of any jury fact-finding that could support even a *Carella* analysis of harmless error, Justice Scalia then turned to what he called "[a]nother mode of analysis." *Id.* at 281, 113 S.Ct. at 2082. In one brief paragraph, he categorized the erroneous reasonable doubt instruction as a "structural error," as to which *Fulminante* renders harmless error analysis inapplicable.

The Chief Justice's concurring opinion suggested that even a constitutionally deficient reasonable doubt instruction might be subject to harmless error analysis, but ultimately agreed with the Court that it was not. Notably, the Chief Justice contrasted the defective reasonable doubt instruction in *Sullivan* with the conclusive presumption instruction in *Carella*, which was subject to harmless error analysis. 508 U.S. at 284, 113 S.Ct. at 2084.

*Sullivan* made clear that at least one type of constitutional error in a jury charge was not subject to any harmless error analysis. It did not resolve, however, whether other instruction errors were also not amenable to harmless error analysis, nor whether instruction errors that were amenable to harmless error analysis were to be assessed on the record as a whole to determine what a properly instructed jury *would have* found (*Brecht*) or by examining what facts the jury did find in order to determine whether the facts found were "functionally equivalent" to

the element incorrectly charged (*Carella* concurrence).

However, the four Justices concurring in *Carella* had left no doubt that in their view the approach applied by the Court in *Carella* and explicated by the concurrence should be applied to jury charge errors beyond those concerning conclusive presumptions. Justice Scalia said that his analysis applies not only to conclusive presumption instructions but also to an instruction containing a "misdescription of an element of the offense"; both, he said, "deprive[ ] the jury of its factfinding role, and must be analyzed similarly." *Carella*, 491 U.S. at 270, 109 S.Ct. at 2423. Presumably, Justice Scalia would apply his analysis to an instruction that *omitted* an element of an offense, a circumstance that also "deprives the jury of its factfinding role."

The uncertainties as to whether jury charge errors concerning an omission or a misdescription of an element were "trial type" errors subject to harmless error analysis and, if so, whether at least some of these errors were to be analyzed under the approach of the *Carella* concurrence remained until the decision in *California v. Roy.*

## II. *California v. Roy*

Against this background, the Supreme Court decided *California v. Roy*, —— U.S. ——, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996). *Roy* concerned a federal collateral attack upon a state court conviction for first-degree murder and robbery. The prosecution's theory, to the extent viable in light of the jury's verdict, *see Roy v. Gomez*, 81 F.3d 863, 864–65 (9th Cir.1996) (in banc), was that Roy had helped his confederate commit robbery and thereby aided commission of a felony murder. The jury charge required for an aiding and abetting conviction knowledge of the confederate's unlawful purpose and some action to aid commission of the crime. *Id.* at 865. After Roy's trial, the California Supreme Court ruled that an aiding and abetting instruction required the jury to find not only (a) knowledge of the confederate's unlawful purpose and (b) action to assist its accomplishment, but also (c) intent to encourage or facilitate the unlawful purpose. *See*

*People v. Beeman*, 35 Cal.3d 547, 561, 199 Cal.Rptr. 60, 68, 674 P.2d 1318, 1326 (1984).

Since no objection to the charge on intent had been made at the trial, which occurred before the decision in *Beeman*, the issue for the federal habeas court was whether the trial judge's failure to charge that an aider must intend to help his confederate was harmless. That issue, it bears repeating, comprehended two subsidiary issues: (a) what standard does a federal habeas court apply in determining whether an error of this sort is harmless, and (b) how sure must the federal habeas court be that the error is harmless before it may deny habeas relief.

A majority of the Ninth Circuit in banc court ruled that the appropriate standard was that set forth by the four-Justice plurality opinion in *Carella*. In the Ninth Circuit's view, "the omission [of the required intent instruction] is harmless only if review of the facts found by the jury establishes that the jury *necessarily* found the omitted element." *Roy v. Gomez*, 81 F.3d at 867 (emphasis in original). Following the *Carella* concurrence, which had concerned harmless error analysis in the context of a presumption, the Ninth Circuit "treated the omitted element as the 'presumed fact' and considered whether a rational jury could have found the remaining elements of the offense without also finding the omitted element." *Id.* at 866.

The Ninth Circuit also noted that the error in the jury charge could be described as either the omission of an element, which the Court labeled "specific intent," or the misdescription of an element, which the Court labeled "intent." *Id.* at 867 n. 4. Whether considered an omission or a misdescription, the Court felt obliged to apply the analysis of the *Carella* concurrence, *id.*, since Justice Scalia had written that "misdescription of an element of the offense . . . deprives the jury of its factfinding role, and must be analyzed similarly [to a conclusive presumption]." *Carella*, 491 U.S. at 270, 109 S.Ct. at 2423.

The Supreme Court reversed and ruled that the *Brecht* standard, not the standard of the *Carella* concurrence, applied to determination of the harmlessness of the error in the *Roy* jury charge. The Supreme Court's brief *per curiam* opinion first noted that the *Car-*

*ella* concurrence "set out the views of several Justices about the proper way to determine whether an error in respect to the use of a presumption was 'harmless.' " *Roy,* —— U.S. at ——, 117 S.Ct. at 338.[7] The Court then noted that, after *Carella,* the *Kotteakos* standard had been held appropriate for "trial errors." *Id.* (citing *Brecht* ). The Court concluded that the error in *Roy* was a trial error, subject to the *Brecht* standard of harmlessness. *Id.* at ——, 117 S.Ct. at 339. The Court noted, in agreement with the Ninth Circuit, that the jury charge error could be characterized as either an omission or a misdescription of an element and labeled the error as "an error in the instruction that defined the crime." *Id.*

Left uncertain by the *Roy per curiam* was whether all errors in instructions that "define[ ] the crime" are subject to the *Brecht* standard, or whether that standard applies only to errors that concern fairly narrow departures from proper charge language. The charge in *Roy* had not omitted the element of intent altogether, but had omitted (or misdescribed) only an aspect of the required mental state—and an aspect that was somewhat similar to the ingredients that were correctly stated.

What did seem clear from the *Roy per curiam,* however, was that the harmless error analysis of the *Carella* concurrence was relegated at least primarily and perhaps exclusively to jury charge errors that concerned conclusive presumptions. But even that conclusion, and perhaps the entire meaning of the *Roy per curiam,* was placed in considerable doubt by the concurring opinion in *Roy,* written by Justice Scalia for himself and Justice Ginsburg.

Justice Scalia began by stating both what he understood the Court to have decided and what he understood had not been decided. He wrote:

> I agree with what the Court decides in its *per curiam* opinion: that the *Brecht–O'Neal* standard for reversal of the conviction ("grave doubt as to the harmlessness of the error") rather than the more strin-

gent *Chapman* standard (inability to find the error "harmless beyond a reasonable doubt") applies to the error in this case when it is presented, not on direct appeal, but as grounds for habeas corpus relief. The Ninth Circuit did not apply that more deferential standard, and I therefore concur in the remand.

> I do not understand the opinion, however, to address the question of what *constitutes* the harmlessness to which this more deferential standard is applied—and on that point the Ninth Circuit was quite correct.

*Id.* at ——, 117 S.Ct. at 339 (Scalia, J., concurring).

Thus, for Justices Scalia and Ginsburg the Supreme Court's reversal in *Roy* concerned only the degree of certainty the reviewing court must have as to whether the error was harmless and did not even "address" the standard for assessing harmlessness when a jury charge omits (or misdescribes) an element of an offense. This characterization of *Roy* is somewhat surprising in view of the Ninth Circuit's in banc opinion, which the Supreme Court rejected. That opinion had explicitly noted that (a) the *Chapman* approach was not applicable on collateral review, (b) *Brecht* stated the correct standard (whether the error had substantial and injurious effect or influence in determining the jury's verdict), (c) *O'Neal* stated how sure the reviewing court must be that the *Brecht* standard has been met, and (d) the *Carella* concurrence stated the correct mode of analysis for assessing the harmlessness of the omission of an element from a jury charge. *Roy v. Gomez,* 81 F.3d at 868. The Ninth Circuit had thus combined the standards of *Brecht* and the *Carella* concurrence, and invoked the certainty test of *O'Neal.*

Undaunted by the *Roy per curiam* 's apparent relegation of the *Carella* concurrence to presumption cases, *see Roy,* —— U.S. at ——, 117 S.Ct. at 338, Justice Scalia stated that the analysis set forth in that concurrence applied to the error in *Roy* because, as in *Carella,* the jury had not rendered a ver-

---

**7.** Though the precise issue in *Carella* concerned a presumption, the "views" set forth in Justice Scalia's concurrence explicitly concerned the proper harmless error analysis for any jury charge error that deprived a jury of its factfinding role, including misdescription of an element.

dict on each element of the crime.[8] There could not be speculation, he continued, as to what a properly instructed jury would have found. Instead, "[t]he error in the present case can be harmless only if the jury verdict on other points effectively embraces this one [the uncharged aspect of intent] or if it is impossible, upon the evidence, to have found what the verdict *did* find without finding this point as well." *Id.* at —– –—, 117 S.Ct. at 339–40 (emphasis in original) (citing the *Carella* concurrence). He concurred, he said, "so that the Ninth Circuit may determine whether there is 'grave doubt' that this is so, rather than (what it did) determine whether it is impossible to 'be certain' that this is so." *Id.* at. —–, 117 S.Ct. at 340 (citing *Roy v. Gomez*, 81 F.3d at 867).

### III.   The Resulting Uncertainties

In the absence of the *Roy* concurrence, I would have thought that the *Roy per curiam* required the *Brecht* standard for harmlessness, rather than the standard of the *Carella* concurrence, to be applied to the jury charge error in *Roy*. Even with the *Roy* concurrence, there is, a strong argument that this is the view of the seven Justices who joined the *Roy per curiam* opinion. But when Justices Scalia and Ginsburg state that the Court has not even addressed the proper standard and has decided only how sure the reviewing court must be that the standard has been met (*O'Neal* rather than *Chapman* ), I am left in some uncertainty.

Even if *Roy* has decided that the *Brecht* standard applies to the charge error in that case, a further uncertainty would remain. It would not be clear whether the *Brecht* standard is applicable only because the words omitted from the jury charge are so closely related to the words that were included, as they were in *Roy*, or whether the harmless-

ness of any "error in the instruction that defined the crime," *Roy*, —– U.S. at —–, 117 S.Ct. at 339, is also to be assessed under the *Brecht* standard. In *Roy*, the charge obliged the jury to find one aspect of *mens rea*, knowledge of the confederate's purpose, but omitted (or misdescribed) another aspect, intent to aid. What if the charge had omitted an element altogether? May the reviewing court examine the evidence and predict that a properly instructed jury would have found the element beyond a reasonable doubt? If such an analysis may be made where an entire element is omitted (one not even related to what was included in the charge), is it applicable only to technical elements such as FDIC insurance in a bank robbery case or interstate commerce in a RICO case, or is it also applicable to omission of an element like *mens rea?*

A further uncertainty, inherent in most cases considering claims of harmless error, is whether the reviewing court is to consider the effect of the error on the jury or predict what verdict would have been rendered in the absence of the error. *See* Harry T. Edwards, *To Err Is Human, But Not Always Harmless: When Should Legal Error Be Tolerated?*, 70 N.Y.U.L.Rev. 1167 (1995) (Madison Lecture). For Justice Scalia, in those cases in which the *Carella* standard is applicable, *i.e.*, where the jury has not made a required finding, the answer is clear: the reviewing court should consider the effect of the error and examine only the facts that the jury found. Whether other Justices agree is somewhat doubtful. Where the *Carella* standard is not applicable, it seems likely that most Justices would be willing to predict what verdict would have been rendered in the absence of the error, *i.e.*, consider how strong was the evidence of guilt that was unaffected by the error.[9]

---

8.  Justice Scalia explained:
    A jury verdict that [the defendant] is guilty of the crime means, of course, a verdict that he is guilty of *each necessary element* of the crime. Formally, at least, such a verdict did not exist here: the jury was never asked to determine that Roy had the "intent or purpose of committing, encouraging, or facilitating" his confederate's crime.
    *Roy*, —– U.S. at —–, 117 S.Ct. at 339 (emphasis in original) (citations omitted).

9.  Though these approaches are conceptually distinct, and on occasion appear to affect an outcome, *compare Fulminante*, 499 U.S. at 295–96, 111 S.Ct. at 1257–58 (opinion of White, J., for five-member majority) (admission of coerced confession not shown not to have contributed to the verdict) *with id.* at 3.12, 111 S.Ct. at 1266 (opinion of Rehnquist, C.J., for four-member dissent) (admission of coerced confession harmless in view of overwhelming evidence of guilt), they often tend to merge in practice because the

The principal uncertainty created by *Roy* (which standard is applicable) is heightened by the fact that the *per curiam* opinion does not explicitly reckon with and reject the analysis of the *per curiam* opinion set forth by Justices Scalia and Ginsburg. I recognize that those writing the principal opinion for a multi-judge court are not obliged to respond to everything expressed in an opinion by other members of the court, whether in dissent or in concurrence, and surely we cannot expect one Supreme Court decision to resolve more issues than the case presents. Nevertheless, *Roy* presents a situation where a clear resolution of at least the principal uncertainty created by the *per curiam* and concurring opinions seems warranted. Habeas corpus challenges to state court convictions are among the most frequently litigated matters in the federal district courts and courts of appeals, and assessment of harmlessness is probably the single most recurring issue presented in such cases. On such a vital matter as the appropriate mode of analysis for determining whether a constitutional error is harmless, we ought not to be left with the unresolved tension between the *Roy per curiam* and concurrence. *See* Joseph Goldstein, *The Intelligible Constitution: The Supreme Court's Obligation to Maintain the Constitution as Something We the People Can Understand passim* (1992); *id.* at 133 (urging the Court to develop "canons of comprehensibility"). Possibly some clarification might be forthcoming in the near future. *See United States v. Johnson,* 82 F.3d 429 (11th Cir.1996) (table), *cert. granted,* — U.S. ——, 117 S.Ct. 451, 136 L.Ed.2d 346 (1996) (raising, on direct review of federal conviction, issues concerning plain error analysis to be applied where element of materiality was not submitted to jury).

Without the benefit of *Roy,* there was considerable justification for our Court to rehear the pending appeal in banc to explore and hopefully resolve the differing views as to the harmlessness standard that were well articulated by the panel majority and dissenting opinions. *See Peck v. United States,* 73 F.3d 1220 (2d Cir.1995) (majority opinion of Judge Mahoney); *id.* at 1229 (dissenting opinion of Judge Walker). Now that *Roy* has been decided, it is appropriate to return the matter to the panel for a fresh consideration of the appeal in light of *Roy.* In all likelihood, the panel will be able to dispose of the appeal in a manner that will eliminate any issue warranting in banc rehearing. If not, the in banc Court may be reconvened. The ultimate solution, however, is for the Supreme Court to articulate, authoritatively and unambiguously, the mode of analysis applicable on habeas corpus review when jury instruction errors are assessed for harmless error.

---

weight of the untainted evidence is one factor to be considered in determining the effect of an error upon a jury. *See* Edwards, *supra,* 70 N.Y.U.L.Rev. at 1187. Judge Edwards believes that the "guilt-based" application of harmless error doctrine, illustrated by cases like *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969) (error harmless in view of overwhelming untainted evidence

of guilt), may be giving way to an analysis that focuses on the effect of the error upon the verdict, as illustrated by cases like *O'Neal,* 513 U.S. at ——, 115 S.Ct. at 995 (reviewing court must " 'determine whether the error affected the judgment' ") (quoting R. Traynor, *The Riddle of Harmless Error* 26 (1970)). *See* Edwards, *supra,* 70 N.Y.U.L.Rev. at 1199–1203.